**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **RONALD DEAN BARTON** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 6:21cv89** |
| | § | |
| **COMMISSIONER, SOCIAL** | § | |
| **SECURITY ADMINISTRATION** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying an application for Social Security benefits. The matter was referred to the undersigned for findings of fact, conclusions of law and recommendations for the disposition of the matter pursuant to 28 U.S.C. § 636(b)(1). Having fully reviewed and considered Plaintiff's brief, the Commissioner's response, and Plaintiff's reply, the undersigned recommends that the Commissioner's final decision be **AFFIRMED** and that the above-styled lawsuit be **DISMISSED WITH PREJUDICE**.

**PROCEDURAL HISTORY**

Plaintiff protectively filed an application for disability insurance benefits on March 8, 2016 and protectively filed an application for supplemental security income on July 25, 2016, alleging a disability onset date of June 10, 2010. The applications were denied initially and again on reconsideration. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a video hearing on September 22, 2016 and issued an unfavorable decision on July 28, 2018. Plaintiff submitted a request for review of the ALJ's decision. The Appeals Council issued an order remanding the case to the ALJ on April 25, 2019. In the remand

1

order, the Appeals Council explained that the ALJ failed to provide an adequate explanation for not adopting part of Dr. Kadakia's opinion, despite giving his medical opinion significant weight. The Appeals Council stated that the ALJ should also strongly consider requesting that Dr. Kadakia provide clarification on the specific time period for his opinion concerning Plaintiff's functional capacities and limitations. The Appeals Council ordered the ALJ to further consider Plaintiff's maximum residual functional capacity, identifying his limitations on a function-by-function basis and providing a rationale with specific references to supporting evidence of record. The ALJ was instructed to explain the weight given to such opinion evidence, including an explanation for portions of the opinion that are not adopted.[1]

On remand, the ALJ conducted a video hearing on April 1, 2020, and issued an unfavorable decision on May 8, 2020. Plaintiff submitted a request for review of the ALJ's decision. The Appeals Council denied the request on January 11, 2021. As a result, the ALJ's decision became that of the Commissioner. Plaintiff then filed this lawsuit on March 5, 2021, seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1983); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

---

[1] Administrative Record, ECF 15-3, at *52 (Bates stamp p. 132).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the

plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id*.; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At

Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

## ALJ'S FINDINGS

The ALJ made the following findings in his May 8, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not engaged in substantial gainful activity since June 10, 2010, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the spine post-surgery; degenerative joint disease of the shoulder, post-surgery; obesity and nephrolithiasis.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he could occasionally lift and carry 20 pounds, 10 pounds occasionally, stand/walk 6 hours of an 8 hour workday, sit for 6 hours of an 8 hour workday, occasionally climb ramps and stairs, balance, kneel and crouch, but not stoop or climb ladders, ropes or scaffolds.

6.  The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on September 22, 1965 and was 44 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 10, 2010 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## ADMINISTRATIVE RECORD

*Administrative Hearing*

Plaintiff testified at his hearing before the ALJ on April 1, 2020. Plaintiff testified that he had ten surgeries since 2001 that included a diskectomy, multiple fusions, placement of a spinal cord stimulator, hardware removal and shoulder surgery. Plaintiff explained that a lot of his medical issues resulted from an on-the-job automobile accident in 2007. He received worker's compensation benefits for two years. Over the years, he had surgeries on his low back, neck and shoulder. Plaintiff stated that he has difficulty sitting for long periods of time and estimated that

he can only sit for thirty minutes before needing to stretch and walk before sitting again.  He also stated that he has difficulty standing in place for extended periods of time and estimated that he can stand for twenty to thirty minutes.  Plaintiff testified that he can walk half of a block and lift and carry ten pounds.  He spends most of his time in his recliner and his pain is exacerbated by physical activity.   Plaintiff stated that he does not sleep well, sleeping only two to three hours a night, and he experiences a lack of focus.  Plaintiff testified that he uses a cane for stability at times, such as in the grocery store, but he does not use one at home.

A vocational expert witness, Michael Driscoll, also testified at the hearing.   Mr. Driscoll testified that Plaintiff's past work includes: (1) tank truck driver, DOT 903.683-010, SVP 3, medium; (2) caterer helper, DOT 319.677-010, SVP 3, light; (3) farm worker, DOT 421.687-010, SVP 2, heavy; and (4) water truck driver, DOT 905.683-010, SVP 3, medium.  The ALJ presented a hypothetical individual with Plaintiff's age, education and work background with a residual functional capacity allowing for light work, that is, occasionally lifting and carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and walking for about 6 hours in an 8-hour workday, sitting for about 6 hours of an 8-hour workday, no climbing of ladders, ropes or scaffolds, no stooping, occasional climbing of ramps and stairs, occasional balancing, kneeling and crouching.  Mr. Driscoll testified that the hypothetical individual could perform Plaintiff's past work as a caterer helper.  In addition, Mr. Driscoll identified the following jobs that would be available to the hypothetical individual: (1) laundry sorter, DOT 361.687-014, SVP 2, light work, with 23,000 jobs in the national economy; (2) small product assembler, DOT 706.684-022, SVP 2, light, with 70,000 jobs in the national economy; and (3) machine tender, DOT 706.684-022, SVP 2, light, with 64,000 jobs in the national economy.

The ALJ then asked Mr. Driscoll to consider a hypothetical individual of the same background with the residual functional capacity for sedentary work with occasional lifting and carrying of 10 pounds, frequent lifting and carrying of less than 10 pounds, standing and walking for 2 hours of an 8-hour workday and sitting for about 6 hours of an 8-hour workday with normal breaks and rest period. Mr. Driscoll testified that the hypothetical individual would be precluded from performing Plaintiff's past work and Plaintiff does not have transferable skills to the sedentary level of exertion. If the individual can only stand for 15 minutes at a time and sit for 30 minutes at a time before needing to move around for at least several minutes, Mr. Driscoll stated that the identified jobs would be precluded due to unscheduled work breaks several times a day.

*Medical Record*

An MRI of the lumbar spine on April 3, 2013 showed interbody fusion graft at L4-5, status post left-sided laminectomy and partial left-sided facetectomy at L4-5, solid fusion of the L5 and S1 vertebral bodies, facet joint screws present bilaterally at L5-S1, a 4 mm broad posterior disk protrusion at L2-3 with small annular fissure narrowing the central canal and a 2 mm bulge at L1-2. On May 2, 2013, Dr. Bosita discussed revision of the fusion at the L4-5 level to include removal of the implant at L4-5 and placement of a fusion cage. Plaintiff also requested removal of previously placed L5-S1 facet screws that were no longer needed. Dr. Bosita performed the surgery on May 28, 2013. At a follow up on October 31, 2013, Plaintiff reported improvement in overall back pain but he was experiencing hardware pain. An MRI of the cervical spine on the following day showed mild to moderate multilevel cervical spondylosis and a left-sided paracentral C5-6 herniation. On November 11, 2013, Dr. Bosita noted 80% improvement following lumbar fusion revision surgery and recommended C5-6 anterior cervical fusion surgery. Dr. Bosita performed the C5-6 cervical diskectomy and fusion on December 10, 2013. Dr. Bosita

noted improvement on February 24, 2014 and recommended increasing activity.  On March 7, 2014, Plaintiff had symmetrically present and normal upper extremity strength and reflexes.  Light touch was normal for all cervical dermatomes.  Plaintiff received trigger point injections and pain management care was recommended.  Plaintiff reported mid-thoracic pain on September 8, 2014. Dr. Bosita referred Plaintiff for physical medicine and rehabilitation for treatment.  At a return visit on January 26, 2015, Dr. Bosita noted a good outcome after C5-6 fusion.  Plaintiff reported increasing lumbar pain.  An MRI on February 16, 2015 showed posterior lateral hardware placement at L4-5, left laminectomy and partial facetectomy, laminectomy and disk fusion surgery at L5-S1, mild degenerative post-surgical changes at L3-4 with mild facet arthrosis and hypertrophy of the ligamenta flavum and an annular tear with circumferential bulging of the disc at L2-3 without marked impingement.  Plaintiff received bilateral L4 and L5 pedicle screw hardware blocks with lidocaine and Marcaine on February 27, 2015.  Plaintiff reported good relief from the hardware blocks.  Dr. Bosita recommended trigger point injections and cervical facet joint injections at C3-4 and C4-5, which were performed on March 26, 2015.

Plaintiff received pain management care from Dr. Robert Chen.  On April 3, 2015, Plaintiff exhibited reduced range of motion in his neck and mildly reduced low back range of motion. Plaintiff had cervical paraspinal muscle spasm, thoracic paraspinal muscle tenderness and lumbar trigger point tenderness.  Muscle strength and tone were within normal limits and straight leg raises were negative.  Dr. Chen diagnosed chronic pain syndrome, degeneration of cervical intervertebral disc, degeneration of lumbar intervertebral disc, lumbago, lumbar spondylosis without myelopathy and lumbar post-laminectomy syndrome.  Dr. Chen noted the possibility that instrument hardware could be contributing to Plaintiff's lumbar spine pain.  He prescribed Gralise, Zanaflex, hydrocodone-acetaminophen and Zohydro ER.  At a return visit on May 1, 2015, Plaintiff reported

that his hardware removal surgery was scheduled. He did not have much benefit from the prescribed medications and Dr. Chen switched Plaintiff to OxyContin and oxycodone.

Plaintiff also saw Dr. Paul Bradley for nephrolithiasis. On May 6, 2015, Dr. Bradley recommended shock wave lithotripsy. On September 14, 2015, Dr. Bradley started Plaintiff on K-Cit.

Plaintiff had a fusion exploration hardware removal surgery on May 12, 2015. At a follow up on June 8, 2015, Dr. Bosita noted clean, dry and intact incisions, no erythema, dehiscence or fluctuance and 5 out of 5 strength in both legs. He continued Plaintiff on oxycodone and ordered physical therapy. Plaintiff continued pain management with Dr. Chen. On July 22, 2015, Dr. Chen noted normal strength, reduced sensation in the left arm, and normal gait with the ability to stand with some difficulty secondary to pain. When he returned on August 20, 2015, Plaintiff reported exacerbating his back pain on a roller coaster at Six Flags. Dr. Chen temporarily increased Plaintiff's Oxycontin.

Plaintiff had a follow up with Dr. Zapata on September 24, 2015 following an abdominal ultrasound that showed a kidney stone. He was scheduled for a follow up in three months. Plaintiff returned on December 17, 2015 for vomiting. His medications included oxycodone HCl, Flexeril, Ambien, Potassium, and OxyContin. Plaintiff's lungs were clear, his heart had a sinus rhythm and he did not have edema of the legs.

At a wound check on August 31, 2015, Dr. Bosita noted that Plaintiff had a retained staple, but described his postoperative course as stable. He removed the staple with fluoroscopic guidance on September 11, 2015. Dr. Bosita noted 5 out of 5 strength in both arms and legs on December 7, 2015 and clean, dry and intact incisions. Dr. Bosita performed further surgery—an L3-L4

Interlaminar Lumbar Instrumented Fusion—on December 23, 2015.  At his follow up on January 11, 2016, Plaintiff had no significant leg pain.

Plaintiff saw Dr. Chen on January 27, 2016 and reported that he was doing well until he slipped off of his truck, causing increased low back pain.  Plaintiff reported slow improvement on February 25, 2016.  Plaintiff continued to have normal muscle strength and tone, but reduced spine range of motion and tenderness on palpation.  Dr. Chen recommended trigger point injections for spasms.  He gave Plaintiff an injection of Tordol on March 21, 2016.  Plaintiff reported increasing mid-back pain on April 18, 2016.  Dr. Chen recommended weaning some medications due to dependence and tolerance to medications.  Plaintiff reported short term pain relief following trigger point injections.  Dr. Chen increased Plaintiff's medications in August 2016 prior to neck surgery.

An MRI of the cervical spine on October 21, 2016 showed mild compression deformity of the T1 vertebral body anteriorly consistent with old fracture, minimal height loss, right posterior disc osteophyte complex at T3-4 mildly narrowing the right neural foramen with mass effect on the anterior aspect of the cord at this level but no abnormal cord signal or canal stenosis.

A bone density test on March 23, 2017 showed a moderately low T-score in the neck resulting in a moderate fracture risk.  Plaintiff went to the emergency room on April 23, 2017 with left flank pain.  A CT of the abdomen showed bilateral non-obstructing renal caliceal stones, larger on the left, a left renal parapelvic cyst and post-surgical changes to the lower lumbosacral spine. He was diagnosed with a non-obstructing kidney stone and prescribed Motrin.

Plaintiff's primary care provider, Dr. Soumya Kota, prescribed muscle relaxers for spasms and medication to prevent and treat bone loss.  Plaintiff reported sleep improvement with Ambien. At a follow up with Dr. Chen on July 5, 2017, Plaintiff continued to have normal strength but reduced lumbar flexion and extension with diffuse tenderness throughout the low back.  Dr. Chen

noted that previous radiofrequency ablation of the medial branches of the thoracic spine provided significant improvement of the severe component of Plaintiff's pain on the left side.

Plaintiff went to the emergency room on September 20, 2017 with unspecified abdominal pain. A CT of the abdomen showed non-obstructive kidney stones. Plaintiff was treated with pain medication and released. He returned to the emergency room many times with abdominal pain. Plaintiff passed a kidney stone at a return visit to the emergency room on August 13, 2018. Another CT on October 1, 2018 again showed non-obstructive kidney stones without hydronephrosis. Dr. Bradley recommended another shock wave lithotripsy at a follow up on October 15, 2018. Plaintiff passed another small stone in the emergency room on April 3, 2019 and again on October 14, 2019.

Dr. Kevin Kadakia completed a consultative examination on October 14, 2017. Plaintiff had no palpable muscle spasms and normal strength. He was able to lift, carry and handle light objects, had good hand-eye coordination, was able to perform rapid alternating movements, and had no disturbances of gross and dexterous movements. Sensory examination was normal to light touch throughout. Straight leg raises were positive while sitting and supine at forty degrees bilaterally. Plaintiff exhibited a steady gait with no assistive device. He was unable to squat and rise from that position or rise from a sitting position without assistance. Dr. Kadakia observed that Plaintiff had difficulty getting up and down from the exam table. Plaintiff walked on heels and toes with moderate difficulty but tandem walking was normal and Plaintiff could hop on either foot. Dr. Kadakia noted that Plaintiff's strength was mostly normal in his upper extremities with the exception of mildly decreased right hand strength.

Dr. Kadakia opined that Plaintiff can be expected to sit normally in an 8 hour workday with normal breaks. He has mild to moderate limitations with standing and moderate limitations with

12

walking due to back pain. Dr. Kadakia stated that Plaintiff has mild to moderate limitations with lifting and carrying weight due to back pain and limitations on crouching and squatting. He determined, however, that Plaintiff has no limitations on bending, stooping, reaching, handling, feeling, grasping and fingering. More specifically, Dr. Kadakia concluded that Plaintiff can frequently lift up to 10 pounds, frequently carry up to 20 pounds, occasionally lift up to 20 pounds, and occasionally carry up to 50 pounds. He stated that Plaintiff can sit for 4 hours at a time for a total of 6 hours in an 8-hour workday, stand for 1 hour at a time for a total of 4 hours in an 8-hour workday and walk for 30 minutes at a time for a total of 4 hours in an 8-hour workday. Plaintiff can frequently perform manipulative activities bilaterally, occasionally climb ramps and stairs, balance, kneel, crouch and crawl and never climb ladders or scaffolds or stoop. Dr. Kadakia also assessed limitations on unprotected heights and moving mechanical parts.

Plaintiff was seen in the emergency room on October 14, 2019 for back pain. The treatment note states that Plaintiff had multiple visits that day. He was ambulatory and his exam was benign. Plaintiff was treated with a Toradol injection and Flexeril. The following day, Plaintiff went to the emergency room by ambulance with decreased mental status. EMS gave him Narcan on the way to the hospital and Plaintiff's symptoms improved. Plaintiff had cannabis and opiates in system. A head CT and a chest X-Ray were unremarkable. Plaintiff returned on October 28, 2019 with abdominal pain. An abdominal CT showed mild splenomegaly, poorly distended gallbladder, small bilateral renal calculi with no sign of obstruction and moderate ileitis on a considerable segment of the distal small bowel with no sign of perforation or free air. Plaintiff went back a few days later with thoracic pain on November 2, 2019. He was diagnosed with a sprain of the thoracic spine ligaments and treated with dilaudid.

Plaintiff started care with Dr. Kevin Ju at the Texas Back Institute on November 6, 2019. Plaintiff had normal strength, sensation and reflexes. Plaintiff's gait was unassisted but he had pain on extension or flexion of the spine. Dr. Ju noted that there was no deformity, neurologic deficits or cord compression. He did not recommend surgical intervention.

Dr. Kota admitted Plaintiff to the hospital on December 11, 2019 for dehydration and acute renal failure. He was treated with IV steroid with fluid hydration. Plaintiff was also diagnosed with C. diff colitis and treated with vancomycin. Plaintiff's kidney function and infection improved and he was discharged on December 16, 2019. Plaintiff returned to the emergency room on January 26, 2020 with kidney stone pain.

On January 14, 2020, Dr. Kota reported that Plaintiff's work up showed elevated ANA levels and liver enzymes. Plaintiff was started on amlodipine for high blood pressure during his hospitalization but he reported that he was not taking it and does not routinely check his blood pressure. At a follow up with his nephrologist on January 31, 2020, Dr. Shrivastava noted that labs showed that Plaintiff's renal function improved from his hospitalization. Plaintiff had an elevated blood pressure of 155/95. Dr. Bradley saw Plaintiff on March 23, 2020 and noted that Plaintiff currently had no kidney pain after passing a kidney stone a few days earlier.

## DISCUSSION AND ANALYSIS

In his brief, Plaintiff asserts three issues for review: (1) whether the ALJ improperly substituted his own medical judgment to determine his RFC from the date of alleged disability onset until the date of the consultative examination; (2) whether the ALJ erred by identifying left shoulder joint disease and nephrolithiasis as severe impairments without including accommodations for those impairments in the RFC assessment; and (3) whether the ALJ erred by posing a hypothetical to the vocational expert that does not match his assessed RFC. Plaintiff

submits that prior to Dr. Kadakia's consultative examination in 2017, the State agency medical consultants opined that he does not have a medically determinable impairment and, therefore, did not assess his functional limitations. As a result, Plaintiff argues that the RFC assessed by the ALJ for the time period prior to Dr. Kadakia's opinion is the result of the ALJ improperly substituting his own medical judgment. Plaintiff asserts that the ALJ did not clarify Dr. Kadakia's assessment, including the time period, as directed by the Appeals Council on remand. Further, Plaintiff contends that the ALJ failed to incorporate any functional limitations for nephrolithiasis or degenerative joint disease of the left shoulder, despite finding them to be severe impairments. Finally, Plaintiff asserts that the hypothetical posed to the vocational expert—and therefore the identified available jobs—included frequently lifting and carrying up to ten pounds but the RFC assessed by the ALJ limits Plaintiff to occasional lifting and carrying up to ten pounds.

In response, the Commissioner asserts that assessment of the RFC is solely the responsibility of the ALJ and the record provides substantial support for his decision. The Commissioner submits that the ALJ properly considered all of the evidence, beyond just the medical evidence, and reached a determination of Plaintiff's RFC, which does not require reliance on a medical opinion. In addition, the Commissioner argues that the ALJ, in compliance with the remand order, provided reasons for the portions of Dr. Kadakia's opinion that he did not adopt. The Commissioner states that Plaintiff did not submit any medical opinion evidence for the time period prior to Dr. Kadakia's examination. Concerning Plaintiff's shoulder and kidney impairments, the ALJ contends that Plaintiff does not point to any objective evidence showing functional limitations that are not included in the RFC for light work. Finally, the Commissioner submits that the ALJ's statement that Plaintiff can occasionally lift and carry ten pounds, rather

than frequently, is a "harmless scrivener's error."[2]   The Commissioner points to Dr. Kadakia's finding that Plaintiff can frequently lift up to ten pounds and the ALJ's finding that Plaintiff can perform light work, which includes the ability to frequently lift and carry up to ten pounds.

In his reply, Plaintiff re-asserts his argument that the ALJ's RFC finding is not supported by substantial evidence and that the ALJ improperly substituted his own medical judgment. Plaintiff submits that there is no medical evidence establishing that he can stand and walk for six hours in an eight-hour workday.  Plaintiff additionally argues that the ALJ's alleged error in finding that he can only occasionally lift and carry ten pounds is not harmless.[3]

*RFC Analysis*

Plaintiff asserts that the ALJ improperly made a medical judgment concerning his RFC for the time period prior to the consultative examination.  It is the ALJ's responsibility to determine a claimant's residual functional capacity.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  That finding, however, must be supported by substantial evidence.  *Id*.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Newton v. Apfel*, 209 F.3d at 452.  An ALJ is not required to include limitations that are not supported by the record.

On review, the Court will scrutinize the record to determine whether substantial evidence is present to support the ALJ's finding, but the Court cannot reweigh the evidence or substitute its judgment. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive."  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971)).

---

[2] Memorandum in Support of the Commissioner's Decision, ECF 19, at *17.
[3] Relying on Local Rule CV-7(a)(2), Plaintiff additionally argues in the reply brief that the Commissioner's response should be stricken because it exceeds 15 pages.  The Commissioner's brief, however, is not a motion and the page limit in Local Rule CV-7(a)(2) is not applicable.

When there is medical evidence or medical opinions contradicting the ALJ's RFC finding, he "may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions.  Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions."  *Williams v. Astrue*, 355 Fed.Appx. 828, 832, n. 6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d at 557).  There is no requirement, however, that an ALJ's RFC finding must mirror or match a medical opinion.  *Myers v. Saul*, 2021 WL 4025993, at *8 (W.D.Tex. Sept. 3, 2021).  "The determination of residual functional capacity is the sole responsibility of the ALJ" and he may properly interpret medical evidence to determine the claimant's capacity for work.  *Taylor v. Astrue*, 706 F.3d 600, 602–603 (5th Cir. 2012).  The ALJ's RFC assessment is not a medical opinion.  *Joseph-Jack v. Barnhart*, 80 Fed.Appx. 317, 318 (5th Cir. 2003).  Unlike medical providers and medical consultants, the ALJ considers additional evidence including the claimant's statements and testimony concerning his symptoms, his activities of daily living, the frequency and intensity of pain, the effects of medication, as well as all other medical evidence and opinion statements in the record.  20 C.F.R. § 404.1529.

Here, Plaintiff does not point to medical evidence contradicting the ALJ's RFC assessment. In his decision, the ALJ summarized and considered Plaintiff's symptoms and testimony concerning his limitations, as well as his statements about his daily activities, for the entire time period following his alleged onset date.  The ALJ reasoned that the objective record shows no more than moderate limitations.  He noted that Plaintiff's nephrolithiasis has generally been treated with medication and intermittent treatment of kidney stones.  Plaintiff's function report and testimony reveal the ability to care for personal needs, prepare simple meals, clean, do laundry, shop, maintain finances, mow the lawn, ride rollercoasters and drive.  The treatment notes show

multiple physical examinations with normal strength in the upper and lower extremities, normal gait with no assistive device, intact sensation, intact reflexes, negative straight leg raises and conservative treatment with medication and physical therapy. The ALJ also considered medical evidence showing muscle tenderness and spasms, reduced sensation, and positive straight leg raises. The ALJ referred to specific record evidence of improvement following treatment, non-compliance with therapy, and pain following acute activities such as riding a rollercoaster or lifting something heavy.

The ALJ also explained his consideration of Dr. Kadakia's opinion that Plaintiff can be expected to sit normally in an 8 hour workday with normal breaks, he has mild to moderate limitations with standing and moderate limitations with walking due to back pain, he has mild to moderate limitations with lifting and carrying weight due to back pain and limitations on crouching and squatting and he has no limitations on bending, stooping, reaching, handling, feeling, grasping and fingering. Dr. Kadakia opined that Plaintiff can frequently lift up to 10 pounds, frequently carry up to 20 pounds, occasionally lift up to 20 pounds, and occasionally carry up to 50 pounds, sit for 4 hours at a time for a total of 6 hours in an 8-hour workday, stand for 1 hour at a time for a total of 4 hours in an 8-hour workday, walk for 30 minutes at a time for a total of 4 hours in an 8-hour workday, frequently perform manipulative activities bilaterally, occasionally climb ramps and stairs, balance, kneel, crouch and crawl and never climb ladders or scaffolds or stoop, with limitations on unprotected heights and moving mechanical parts. The ALJ stated:

> Partial weight is given to this opinion because the opinion is based on the objective results of the examination and the limitations support a light residual functional capacity. However, less weight is given to the standing, sitting, walking limitations at one time, as the limitations are not consistent with the objective evidence showing full strength and steady gait with no assistive device. Moreover, the undersigned gives no weight to this opinion relating prior to the date last insured as it was well removed from the date last insured, and therefore, would be mere speculation based on subjective complaints as to any past applicability.

18

Administrative Record, ECF 15-2, at *20 (Bates stamp p. 19). The ALJ provided clear reasoning for his consideration of Dr. Kadakia's opinion and, contrary to Plaintiff's assertion, clarified the applicable time period. He then reiterated that the medical record shows an extensive history of surgeries, injections and pain medication, but it also shows reports of improved symptoms, imaging showing successful fusions, participation in activities that are contrary to a finding of disability, and examinations revealing full strength, intact sensation and a normal gait.

The ALJ specifically determined that Plaintiff has severe impairments resulting in limitations of some work-related functions. He further stated that he "has accounted for said limitations by restricting the claimant to the light exertional level with some additional postural restrictions." *Id.* He further explained "[t]his modified light residual functional capacity addresses the claimant's extensive history of surgeries on his back, reduced strength, limited range of motion, reduced grip strength, degeneration of his spine, bouts of positive straight leg raises, his history of obesity, degeneration of his shoulder, pain with range of motion and tenderness to palpation." *Id.* The ALJ's decision reveals that he appropriately considered the record as a whole and his RFC finding is supported by substantial evidence.

Plaintiff also alleges that the ALJ erred by finding shoulder joint disease and nephrolithiasis to be severe impairments and failing to include specific accommodations for those conditions in the RFC. As explained by the Court in *Stone v. Heckler*,[4] "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." A claimant must show more than a severe impairment to receive

---

[4] *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

benefits. "Satisfying the *Stone* test of severity means only that claimant has passed the second step of the inquiry mandated by the regulations." *Shipley v. Secretary of Health and Human Services*, 812 F.2d 934, 935 (5th Cir. 1987). "A claimant is not entitled to Social Security disability benefits merely upon a showing that (s)he has a severe disability. Rather, the disability must make it so that the claimant cannot work to entitle the claimant to disability benefits." *Gutierrez v. Barnhart*, 2005 WL 1994289, at *9 (5th Cir. 2005). The consideration of whether an impairment is severe at step two is altogether different than the RFC inquiry at step four. *Id.*; see also *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001). As such, Plaintiff has not shown error in his second issue for review simply because the ALJ's RFC does not incorporate specific limitations for every identified severe impairment. Moreover, as stated above, the ALJ specifically addressed his consideration of shoulder degeneration in his RFC finding and explained that Plaintiff's nephrolithiasis has generally been treated with medication and intermittent treatment of kidney stones. Plaintiff has not shown that the ALJ improperly failed to include specific functional limitations for those impairments.

*Vocational Expert Hypothetical*

In his final issue for review, Plaintiff argues that the ALJ committed reversible error by posing a hypothetical to the vocational expert—and thereby identifying available jobs—of an individual who can frequently lift and carry up to ten pounds and then stating in the decision that the RFC provides for "occasional" lifting and carrying of up to ten pounds. Here, the reference to "occasional" lifting and carrying ten pounds is an apparent typographical error. In his analysis, the ALJ repeatedly finds that Plaintiff has the capacity for perform light work, modified by postural limitations.[5] Light work "involves lifting no more than 20 pounds at a time with frequent lifting

---

[5] Administrative Record, ECF 15-2, at *19 (Bates stamp p. 18)

or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  The ALJ never states in his analysis that Plaintiff can only perform a reduced range of light work.  All of these facts reveal that the reference to "occasional" as opposed to "frequent" lifting and carrying up to ten pounds  was merely a mistake.

"Procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).  An administrative decision will not be vacated "unless the substantial rights of a party have been affected." *Id.*  Plaintiff has not shown that his substantial rights were affected by the typographical error.

For these reasons, the ALJ's RFC finding is supported by substantial evidence and the ALJ applied the correct legal standards.  The Commissioner's decision should be affirmed and the complaint should be dismissed.

## RECOMMENDATION

It is hereby **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED** and that this social security action be **DISMISSED WITH PREJUDICE**.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court.  *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on*

*other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 31st day of May, 2022.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE